Edwin T. VIKMAN and Duane
Vikman, Petitioners,

v.

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, LOCAL UN-
ION NO. 1269, an Unincorporated Asso-
ciation, Respondent.

No. 93SC73.

Supreme Court of Colorado,
En Banc.

Jan. 30, 1995.

Rehearing Denied Feb. 21, 1995.

Sherman & Howard, James E. Hautzinger, N. Dawn Webber, Wayne W. Williams, Denver, for petitioners.

Fattor & Kittle, P.C., James C. Fattor, Rita Byrnes Kittle, Denver, for respondent.

Justice KIRSHBAUM delivered the Opinion of the Court.

In *International Brotherhood of Electrical Workers/Local Union 1269 v. Vikman,* 854 P.2d 1302 (Colo.App.1992), the court of appeals reversed the trial court's judgment directing verdicts in favor of the petitioners, Edwin T. Vikman and Duane Vikman, and against the respondent, International Brotherhood of Electrical Workers, Local 1269 (Local 1269), on claims by Local 1269 for collection of fines imposed as the result of disciplinary proceedings instituted by Local 1269 against the Vikmans. The court of appeals also reversed jury verdicts for the Vikmans and against Local 1269 on counterclaims by the Vikmans for willful breach of contract, outrageous conduct, and punitive damages. The court of appeals held that the trial court erred in concluding as a matter of law that the disciplinary proceedings were unfair; in determining that the Vikmans were required to prove their counterclaims by a preponderance of the evidence; and in failing to determine whether the Vikmans failed to exhaust available internal union remedies in the course of the disciplinary proceedings, thus barring them from challenging the fairness of those proceedings and from asserting their counterclaims against Local 1269. The court of appeals also concluded that on retrial additional instructions should be given to the jury to ensure that any verdicts for the Vikmans on their outrageous conduct counterclaims would satisfy the requirements of *Farmer v. United Brotherhood of Carpenters and Joiners, Local 25,* 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977). Having granted certiorari to review the propriety of the court of appeals' judgment, we reverse and remand the case to the court of appeals with directions.

I

In August of 1983, Local 1269 was the bargaining group for workers who sold telephone directory advertisements for Mountain States Telephone and Telegraph Company (hereafter Mountain Bell).[1] On August 7, 1983, Local 1269 initiated a strike against Mountain Bell. Edwin and Duane, twin brothers who were members of Local 1269, did not work at Mountain Bell during the early days of the strike.

Both Edwin and Duane have heart disease. On August 10, 1983, while walking a picket line, Edwin experienced chest pains and was taken to a hospital for treatment. Eight days later a Mountain Bell management employee told Edwin that Edwin would not be eligible for medical insurance benefits if he did not return to work.

Greatly troubled by this information, Edwin returned to work at Mountain Bell on August 22, 1983. Duane also returned to

---

1. At the time in question Mountain States Telephone and Telegraph Company was a subsidiary of American Telephone and Telegraph Co. It was renamed "US West" on or about January 1, 1984.

work at that time, believing that his absence from work would jeopardize Edwin's health and safety. Edwin and Duane made sales calls on August 22, 23, and 24, 1983. Pursuant to a practice established by Mountain Bell, Edwin backdated certain contracts and other documents to reflect that he had worked continuously during the strike.

On August 25, 1983, Gerald Linder, a member of Local 1269's executive committee, informed Edwin that the information given to Edwin about his medical insurance benefits was incorrect and that such benefits would remain in effect for the duration of the strike. Edwin then told Linder that both of the Vikmans would immediately rejoin the strike, and the Vikmans ceased working for Mountain Bell that day. The strike ended on September 6, 1983.

By separate letters dated October 17, 1983, Local 1269 informed Edwin and Duane that on October 7, 1983, they had been charged with crossing a picket line during a strike, in violation of Local 1269's constitution,[2] and that a hearing on the charges would be held on December 3, 1983, in San Francisco, California. The letters did not specify the days the Vikmans allegedly worked or what penalties might be imposed. The union's offices are located in San Francisco.

By letter dated November 11, 1983, Edwin informed Local 1269 that he would not be able to travel to San Francisco because of his health and requested Local 1269 to specify the charges and the days he allegedly worked. On February 16, 1984, Local 1269 sent Edwin a letter stating that his hearing had been continued to March 2, 1984. Edwin sent a letter dated March 1, 1984, to Local 1269 requesting that the charges be dismissed. He argued, *inter alia*, that the charges were not sufficiently specific, that Local 1269's constitution required any hearing on such charges to be held no later than forty-five days after they were filed, and that a fair hearing could be held only in Colorado. He also explained why he had returned to work, stated that he did not obtain any significant financial benefit during the strike,

and requested that a member of Local 1269 be appointed to represent him at the hearing pursuant to Article XXVII, section 5, of Local 1269's constitution. Although Local 1269 received Edwin's March 1, 1984, letter prior to the commencement of the March 2, 1984, hearing, its executive committee, acting as a trial board, proceeded with the hearing and did not appoint a union member to represent Edwin.

At Edwin's March 2, 1984, hearing the trial board considered the charges contained in the October 17 letter to Edwin and Edwin's correspondence. The trial board found Edwin guilty of the charged violations on March 2, 1984. On April 6, 1984, the executive committee met and assessed a fine of $7,168.70 against him. No transcripts or minutes of these proceedings were introduced into evidence.

Duane did not respond to the October 17, 1983, letter. He testified at trial that he concluded that any fine imposed would probably not exceed the cost of air fare to and from San Francisco and that if the fine did exceed that amount he could appeal the decision. He also testified that he believed Edwin's correspondence would apply to him as well as to Edwin.

Local 1269 conducted a hearing on the charges against Duane on December 3, 1983. No transcripts of the proceeding were admitted into evidence. Article XXVII, section 7, of Local 1269's constitution provides as follows:

> If the accused wilfully fails to stand trial—or attempts to evade trial—the trial board shall proceed to hear and determine the case just as though the accused were present.

Testimony elicited at trial indicated that pursuant to Local 1269 policy a union member who does not appear at disciplinary proceedings is deemed to have admitted the charged violations. The trial board found Duane guilty of the alleged violations on December 3, 1983.

---

**2.** The constitution of the International Brotherhood of Electrical Workers (IBEW) was adopted by Local 1269 along with Local 1269's by-laws.

We refer to the IBEW constitution as "Local 1269's constitution" for the sake of consistency of reference in this opinion.

Joanne Malik, Local 1269's recording secretary and a member of the executive committee, was present at all the proceedings held with respect to the Vikmans. She testified at trial that on December 3, 1983, the trial board read the charges contained in the October 17, 1983, letter sent to Duane and determined that he should be fined. She also testified that the trial board received information from Peter Pusateri, Local 1269's business manager, that Duane and Edwin had worked for three weeks, and that Pusateri had obtained his information from Gerald Linder. Linder testified that he told Pusateri he, Linder, had no actual knowledge of the amount of time the Vikmans had worked but assumed the period was three weeks. On April 6, 1984, Local 1269's executive committee met and assessed a fine of $5,733.02 against Duane.[3]

Neither Edwin nor Duane was notified in advance of the April 6, 1984, executive committee meeting. Edwin testified at trial that he never received any notice of the executive committee's actions in his case until he was served with the summons and complaint in this civil action. Malik testified at trial that on April 12, 1984, she typed and mailed a letter to Edwin by certified mail, return receipt requested. The letter was signed by Michael Shanks, Local 1269's president; informed Edwin that on April 12, 1984, the executive committee had assessed a fine of $7,168.70; and described the process for any appeal.[4] Malik testified that she remembered receiving a return receipt from that mailing but that she did not recall whether the return receipt was signed. No return receipt was introduced as evidence at trial. Malik also testified that she erroneously typed the date of the executive committee's meeting as "April 12, 1984," rather than April 6, 1984.

On April 12, 1984, Michael Shanks sent a similar letter to Duane by certified mail, return receipt requested. The letter stated that the executive committee had met on April 12, 1984, and had assessed a fine of $5,733.02. The letter also described the appeal procedures available pursuant to Local 1269's constitution. On May 7, 1984, that letter was returned to Local 1269 as unclaimed. Gerald Linder gave a copy of the letter to Duane sometime in April.

Duane mailed a letter dated May 17, 1984, to Michael Shanks and sent copies thereof to three other persons, including Local 1269's international vice president. The letter indicated that Duane wished to appeal the assessment against him. Local 1269 did not respond to Duane's letter.

At trial, Gerald Linder testified that when he told Pusateri he assumed that the Vikmans had worked for three weeks during the strike, Linder knew that the Vikmans had participated in the strike for the first week thereof, that Edwin had been hospitalized for a period of time, that the only documentation Linder had reviewed suggested that the Vikmans may have worked for Mountain Bell for a period of two weeks, and that he saw no reason to ask the Vikmans how long they had actually worked. Linder testified that when Pusateri asked him to verify Edwin's health status concerning the latter's request to hold

---

**3.** Malik testified at trial that Local 1269 attempted to obtain from Mountain Bell the exact amounts the Vikmans earned during the strike, but Mountain Bell, believing Local 1269 would use this information to fine the Vikmans, refused to release the information. Malik further testified that, "[l]acking any real facts" regarding how much the Vikmans actually earned during the strike, Local 1269 "used the annual earnings and prorated it according to that period during which [the Vikmans] [allegedly] worked behind the picket lines." The fines were intended to reflect the amount the Vikmans earned during the time they did not honor the strike plus $500.

**4.** Article XXVII, section 12, of Local 1269's constitution provides as follows:

Any member who claims an injustice has been done him by any [Local Union] or trial board, or by any Railroad Council, may appeal to the [International Vice President] any time within forty-five (45) days after the date of the action complained of. If the appeal is from an action of a railroad local union, or a Railroad Council, it must go to the [International Vice President] in charge of railroad matters.

A copy of any appeal must be filed with the [Local Union], or with the Railroad Council, as the case may be.

Article XXVII, section 13, of Local 1269's constitution also provides that a person must pay a nominal amount of $20 per month, with payment due within 15 days of the date a decision is rendered, to preserve his or her right to appeal.

any hearings in Denver, Linder replied that "if he's well enough to work he's well enough to go to San Francisco for his trial."

One other member of Local 1269, Joanne Miller, worked for Mountain Bell during the strike. Gerald Linder initiated a conversation with Miller to verify the actual amount of time—three days—that she had worked, reported that accurate information to the trial board, and asked the trial board to exercise leniency on her behalf. Although Local 1269 imposed a fine of $818.50 on Miller, it subsequently agreed after informal negotiations to accept the sum of $524.50 as full satisfaction of her penalty even though she at no time sought to appeal the trial board's decision.

In September and October of 1983, the Vikmans experienced a pattern of verbal and physical harassment. Linder acknowledged at trial that Local 1269 sought to harass the Vikmans, that various union members called them "scabs" at work, that the Vikmans were given false customer telephone messages by Local 1269 personnel, and that the Vikmans were assigned to solicit sales from persons who were actually clients of other salespersons. He also testified that he told a union member that Local 1269 would "get" the Vikmans. The Vikmans' cars were damaged in the Mountain Bell parking lot, their homes and lawns were damaged, and they received obscene and abusive telephone calls. The Vikmans ultimately took early retirement from Mountain Bell.

On August 28, 1985, Local 1269 filed this civil action against the Vikmans to collect the fines that had been assessed against them. The Vikmans answered, filed counterclaims alleging violations of federal labor law, outrageous conduct, and willful breach of contract, and requested awards of actual and punitive damages.[5] The trial court dismissed the Vikmans' federal claims, concluding that federal courts had exclusive jurisdiction thereof.

A jury trial commenced February 5, 1990. During the trial the trial court entered a directed verdict for the Vikmans and against Local 1269 on Local 1269's claims for collec-

tion of fines. The trial court concluded as a matter of law that Local 1269 violated its constitution because its proceedings against the Vikmans were fundamentally unfair. This ruling in effect also constituted a partial directed verdict in favor of the Vikmans and against Local 1269 on the Vikmans' counterclaims for willful breach of contract.

Local 1269 initially moved for the entry of directed verdicts in its favor on the Vikmans' counterclaims on the ground, *inter alia*, that the Vikmans were barred from asserting such counterclaims because they had failed to exhaust available union remedies. The trial court denied the motion. Local 1269 later filed a motion to dismiss Duane's counterclaims on the same ground. The trial court also denied that motion, but did submit the issue of exhaustion of remedies to the jury with respect to the Vikmans' counterclaims for willful breach of contract.

The following pertinent instructions were given to the jury:

### INSTRUCTION NO. 9

The plaintiff claims that it was exercising its legal rights in declaring a strike against Mountain Bell, asking union members to picket, and in assessing fines against members who worked for Mountain Bell during the strike, and in bringing this action to collect those assessments. If the plaintiff was exercising its legal rights in a manner which would not otherwise constitute extreme and outrageous conduct, your verdict must be for the plaintiff.

Furthermore, the plaintiff had a legal right to file this lawsuit and to defend the counter-claims asserted by the defendants. If you find that the defendants suffered mental anguish caused by the litigation, you may not award damages for such injuries.

### INSTRUCTION NO. 17

The Court has determined that, as a matter of law, the procedures followed by

---

5. The Vikmans also asserted a claim for rescission of contract. The disposition of this claim is unclear from the record.

the union in imposing fines on Ed and Duane Vikman did not accord the Vikmans a fair and impartial hearing. You are instructed that you must accept this determination. This determination by the Court is not to be construed as willful and wanton conduct. This is for you to decide.

### INSTRUCTION NO. 23 [6]

To find for Edwin T. Vikman on his claim for breach of contract, you must find that both of the following have been proved:

1. The union, in assessing a fine against Edwin T. Vikman, willfully and wantonly failed to follow the procedures set forth in the union's constitution;

2. Edwin T. Vikman exhausted the remedies available to him under the union constitution.

If you find that either of these propositions has not been proved by a preponderance of the evidence, then your verdict must be for the union.

On the other hand, if you find that both of these propositions have been proved by a preponderance of the evidence, then your verdict must be for the defendant, Edwin T. Vikman.

### INSTRUCTION NO. 25

If a union member does not participate in the union's trial board procedure, or fails to appeal the trial board's decision, or fails to follow the rules of appeal set forth in the union's constitution, he has failed to exhaust his available remedies. If it is futile for a union member to exhaust his remedies, he is not required to do so.

### INSTRUCTION NO. 28

You have heard evidence of disciplinary acts and criticisms of Ed and Duane Vikman by a management official of Mountain Bell. You are instructed that you may not find the union liable or award damages against the union solely because of these management actions. You may, however, consider evidence of union participation in these disciplinary actions as part of your assessment of the totality of conduct for which the union is responsible under defendants' counterclaim for extreme and outrageous conduct.

Local 1269 tendered an instruction to the effect that the Vikmans must present clear proof of Local 1269's involvement in the acts allegedly committed against the Vikmans. The trial court refused to so instruct the jury.

The jury returned verdicts in favor of the Vikmans on their counterclaims against Local 1269. The jury awarded Edwin $180,000 for willful breach of contract, $160,000 for outrageous conduct, and $10,000 in punitive damages. It awarded Duane $60,000 for willful breach of contract, $85,000 for outrageous conduct, and $10,000 in punitive damages.

Local 1269 appealed the directed verdicts and the jury verdicts. The court of appeals reversed and remanded the case for a new trial. The court held that the trial court erroneously entered directed verdicts for the Vikmans on Local 1269's strike fine claims because the trial court improperly concluded that Local 1269's hearings were unfair as a matter of law and improperly failed to determine whether the Vikmans had exhausted their internal union remedies. *Vikman*, 854 P.2d at 1304. The court of appeals further held that the trial court erred in not instructing the jury that the Vikmans were required to establish by clear proof that Local 1269 authorized or ratified unlawful conduct of its members against the Vikmans. *Id.* at 1307. The court of appeals directed the trial court to give "additional jury instructions" on retrial to ensure that the jury would not consider federally protected union conduct related to normal strike activity. *Id.* at 1306. The

**6.** Instruction No. 24 is identical to Instruction No. 23 except that "Duane Vikman" is substitut-   ed for "Edwin T. Vikman."

Vikmans then requested certiorari review of the court of appeals' judgment.[7]

## II

The Vikmans contend that the court of appeals erred in reversing the trial court's directed verdicts against Local 1269 on its strike fine claims and in reversing the jury's verdicts on their counterclaims. We agree.

## A

At the conclusion of the Vikmans' presentation of evidence, Local 1269 moved to dismiss the Vikmans' counterclaims on the ground, *inter alia*, that the Vikmans were prohibited from asserting such counterclaims because they failed to exhaust internal union remedies available to them. With respect to this issue, the Vikmans responded that because Local 1269 had violated its constitution and by-laws they had sufficiently exhausted their union remedies. Without explicitly addressing the exhaustion issue, the trial court denied Local 1269's motion.[8]

At the conclusion of the evidentiary portion of the trial the Vikmans orally requested the trial court to enter directed verdicts against Local 1269 on the latter's strike fine claims, contending that the evidence conclusively established that Local 1269 breached its constitution. Local 1269 asserted in response that Duane was barred from contesting the fine assessed against him because he failed to exhaust his internal union remedies and that factual questions remained for jury

resolution concerning whether Edwin received notice of the fine assessed against him. The trial court granted the Vikmans' motion for directed verdict, holding that Local 1269 breached its constitution by failing to grant the Vikmans fair hearings and by failing to respond to Edwin's request to have a union member appointed to represent him.

After the trial court granted the Vikmans' motion for directed verdicts on the strike fine claims, Local 1269 moved for a directed verdict on its strike fine claim against Duane and moved for dismissal of Duane's counterclaims. Local 1269 asserted that because he had failed to exhaust internal union remedies Duane was barred from defending against the strike fine claim and from asserting his counterclaims. In denying Local 1269's motions, the trial court referred to its prior ruling denying Local 1269's motion to dismiss the Vikmans' counterclaims for failure to exhaust internal union remedies.

Instruction Nos. 23 and 24 informed the jury that to recover on their counterclaims for willful breach of contract the Vikmans must prove that Local 1269 willfully and wantonly failed to follow procedures established by its constitution and that the Vikmans exhausted remedies available under the union constitution. Instruction No. 25 also informed the jury that a union member is not required to exhaust union remedies if to do so would be futile. The jury returned verdicts in favor of the Vikmans on their willful breach of contract counterclaims.[9]

7. Local 1269 filed a cross-petition requesting review of issues of whether there was sufficient evidence to instruct the jury on outrageous conduct and willful breach of contract and whether the damage award was excessive as a matter of law, unsupported by the evidence, or based on error in the instructions and verdict forms. We denied the cross-petition.

8. The trial court at one point requested Local 1269's attorney to shorten his argument concerning the exhaustion doctrine because it had heard the argument many times. The Vikmans' attorney stated that he could not "imagine on those facts [of Local 1269's conduct] that there's any failure to exhaust remedies." The trial court then stated "No, but all of that—all of that I consider." In denying Local 1269's motion to dismiss the Vikmans' counterclaims, the trial court necessarily rejected Local 1269's argument

that the Vikmans' failure to exhaust internal union remedies barred them from asserting their counterclaims.

9. The jury also returned verdicts in favor of the Vikmans and against Local 1269 on the Vikmans' outrageous conduct counterclaims. The jury was not instructed to consider whether either of the Vikmans exhausted available union remedies with respect to his tort counterclaim, and Local 1269 did not request such an instruction. Local 1269's notice of appeal did not contain any issue respecting the application of the exhaustion doctrine to the Vikmans' tort counterclaims; with regard to exhaustion issues, Local 1269 argued only that the trial court erred in directing verdicts for the Vikmans on the strike fine claims and in not directing a verdict against Duane on his willful breach of contract counterclaim.

In reversing the directed verdicts and the jury's verdicts, the court of appeals concluded that in every case filed by a union to enforce fines imposed upon a union member, section 101(a)(4) of the Labor–Management Reporting and Disclosure Act of 1959 (LMRDA) requires a determination of whether the member exhausted available internal union remedies before permitting such members to assert defenses to the union's claim. The court determined that section 101(a)(4) of the LMRDA requires a union member to exhaust available internal union remedies to acquire "standing" to seek judicial remedies against the union for alleged breaches of contract and alleged tortious conduct. The court recognized that exhaustion need not be pursued if to do so would be futile, but held that the record contained no evidence to support a finding of futility in this case. *Vikman,* 854 P.2d at 1304.

### B

■ When considering a motion for directed verdict pursuant to C.R.C.P. 50, a trial court must examine the evidence in the light most favorable to the non-moving party, indulging all reasonable inferences which may be drawn from the evidence in favor of the non-moving party. *Smith v. City & County of Denver,* 726 P.2d 1125, 1128 (Colo.1986). If, after such review, the trial court determines that the evidence and all reasonable inferences drawn therefrom compels the conclusion that reasonable jurors would agree that a verdict against the moving party could not be sustained, the motion should be granted. *Id.; Safeway Stores, Inc. v. Langdon,* 187 Colo. 425, 430, 532 P.2d 337, 340 (1975).

### C

■ The relations between a labor union and its members are defined by the terms of the union constitution and by-laws, which in essence constitute a contract. *NLRB v. Allis–Chalmers Mfg. Co.,* 388 U.S. 175, 192, 87 S.Ct. 2001, 2012, 18 L.Ed.2d 1123 (1967); *Local 248 UAW v. Natzke,* 36 Wis.2d 237, 153

N.W.2d 602, 608 (1967). A union may impose sanctions authorized by its constitution and by-laws upon its members and may seek enforcement of such sanctions in state court proceedings to enforce the contract. *Allis–Chalmers,* 388 U.S. at 192, 87 S.Ct. at 2012; *see NLRB v. Boeing Co.,* 412 U.S. 67, 75–78, 93 S.Ct. 1952, 1957–59, 36 L.Ed.2d 752 (1973).

■ While the relations between a union and its members are contractual, Congress has recognized that such relations have special significance for national labor relations policy. The LMRDA contains a "Bill of Rights of Members of Labor Organizations," codified at 29 U.S.C. §§ 411–415, which contains the following pertinent provision:

> No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization ... unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

29 U.S.C. § 411(a)(5) (1988). Often, as here, these protections are expressly incorporated in union constitutions.[10] In a suit by a union to enforce sanctions imposed upon a union member, the member may allege failure by the union to comply with these provisions as a defense to the complaint. *See Communications Workers v. Drake,* 487 N.E.2d 821, 824 (Ind.App.1985); *Local 32, Office and Professional Employees Int'l Union v. Sabetay,* 159 N.J.Super. 518, 388 A.2d 652, 656 (1978).

In accommodating the interests of unions and of individual union members, Congress also adopted a national policy encouraging intra-union resolution of disputes between a union and a member thereof. This policy is reflected in section 101(a)(4) of the LMRDA, as follows:

> No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding

---

**10.** The LMRDA also contains the following pertinent language:

> Any provision of the constitution and bylaws of any labor organization which is inconsistent

> with the provisions of this section shall be of no force or effect.

29 U.S.C. § 411(b) (1988).

before any administrative agency, irrespective of whether or not the labor organization or its officers are named as defendants or respondents in such action or proceeding, or the right of any member of a labor organization to appear as a witness in any judicial, administrative, or legislative proceeding, or to petition any legislature or to communicate with any legislator: *Provided,* That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organization or any officer thereof: *And provided further,* That no interested employer or employer association shall directly or indirectly finance, encourage, or participate in, except as a party, any such action, proceeding, appearance, or petition.

Labor–Management Reporting and Disclosure Act § 101(a)(4), 29 U.S.C. § 411(a)(4) (1988). Section 101(a)(4) of the LMRDA was designed to protect union members who file judicial proceedings against their union from provisions in union constitutions requiring expulsion of a union member who initiates judicial proceedings against the union prior to exhausting all internal union procedures, however unreasonable or inadequate such internal procedures might be. *See Mamula v. United Steelworkers,* 414 Pa. 294, 200 A.2d 306, 310 (1964). The statute also encourages unions and their members to resolve internal disputes without the delays, costs, and heightened adversarial relationships associated with judicial proceedings. *Ruzicka v. General Motors Corp.,* 523 F.2d 306, 311–12 (6th Cir.1975).

Congress had previously indicated a preference for exhaustion of available remedies in the conduct of labor relations in section 203(d) of the 1947 Labor Management Relations Act (LMRA), as follows:

Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement.

29 U.S.C. § 173(d) (1988). In *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965), the Supreme Court held that a union employee who filed a civil action pursuant to section 301(a) of the LMRA alleging a violation of the applicable collective bargaining agreement between the union and the employer must first pursue the exclusive grievance and arbitration procedures established by the collective bargaining agreement. The Court noted the legislative preference for use of contractually established procedures to resolve disputes concerning collective bargaining agreements, as reflected in section 203(d) of the LMRA, and suggested that employers and unions should be encouraged to establish uniform and exclusive methods for resolution of employee grievance. *Id.* at 653, 85 S.Ct. at 616.

In *NLRB v. Marine Workers,* 391 U.S. 418, 88 S.Ct. 1717, 20 L.Ed.2d 706 (1967), the Supreme Court held that section 101(a)(4) of the LMRDA is not jurisdictional. The Court held that the statute authorizes a court or agency to consider whether intra-union grievance procedures are reasonable in light of the issues and, to exercise discretion in determining whether an employee should be prohibited from pursuing judicial remedies for sanctions imposed upon him or her because of a failure to exhaust available internal union remedies. The Court emphasized the permissive language of section 101(a)(4) of the LMRDA and concluded that such language did not constitute a grant of authority to unions to more firmly police their members, but rather represented a statement of policy that courts may in their discretion stay judicial proceedings for four months while the aggrieved person seeks relief from union procedures. *Marine Workers,* 391 U.S. at 426, 88 S.Ct. at 1722.

In *Clayton v. Automobile Workers,* 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981), the Supreme Court held that a union member was not barred by the exhaustion requirement of section 101(a)(4) of the LMRDA from pursuing a civil action filed pursuant to section 301 of the LMRA seeking money damages against his union for alleged breach of the duty of fair representation and also seeking reinstatement from his employer. The Court concluded that the exhaustion

provisions of section 101(a)(4) of the LMRDA were applicable to contractually established union procedures governing internal union matters such as the interpretation and application of a union constitution. *Id.* at 688, 101 S.Ct. at 2094. In reaffirming its holding in *Marine Workers* that courts have discretion in cases arising from disputes between union members and their unions to decide whether to require exhaustion of internal union procedures, the Court indicated a framework to assist trial courts in exercising that discretion as follows:

> In exercising this discretion, at least three factors should be relevant: first, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks under § 301 [of the LMRA]; and third, whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim. If any of these factors are found to exist, the court may properly excuse the employee's failure to exhaust.

*Clayton,* 451 U.S. at 689, 101 S.Ct. at 2095. The Court also indicated that the policy of encouraging resort to contractually established union procedures for resolution of internal union disputes articulated in *Maddox* retained vitality. *Clayton,* 451 U.S. at 696, 101 S.Ct. at 2099.

■■■ These cases establish that the exhaustion requirement of section 101(a)(4) of the LMRDA is not a jurisdictional prerequisite to the ability of a union member to defend against claims filed against him or her by the union or to initiate civil litigation against the union for alleged violations of state contract law not preempted by the federal statute. While union members are to be encouraged to resort to available internal union procedures for resolution of intra-union disputes, if such conduct by a union member would be futile, a court may in its discretion decline to require exhaustion. *Johnson v. General Motors Corp.,* 641 F.2d 1075, 1079 (2d Cir.1980); *Semancik v. United Mine Workers Dist. # 5,* 466 F.2d 144, 150 (3d Cir.1972); *International Bhd. of Elec. Workers v. Smith,* 76 Ohio App.3d 652, 602 N.E.2d 782, 787–88 (1992); *Walsh v. Communications Workers, Local 2336,* 259 Md. 608, 271 A.2d 148, 150 (1970). *See Allander v. Carpenters Dist. Council,* 145 Colo. 164, 169–70, 358 P.2d 8, 11 (1960). The competing policies of encouraging the establishment of adequate intra-union procedures for resolution of internal union disputes and supporting the right of union members to defend against actions and pursue judicial remedies for improper union conduct are applicable to cases involving union efforts to obtain judicial enforcement of union remedies as well as to cases wherein union members seek judicial relief.

### D

■■■ The trial court concluded that utilization of Local 1269's procedures by the Vikmans would be futile because the proceedings were conducted in violation of Local 1269's constitution and were fundamentally unfair. We agree.

Article XXVII of Local 1269's constitution provides that a union member must be given notice of the basis for any disciplinary action. The initial letters advising the Vikmans of the charges against them did not indicate what specific time periods were allegedly involved or what the basis for calculating any fine might be. Local 1269 did not give advance notice to either Edwin or Duane of the April 6, 1984, meeting of the executive committee at which the amounts of their fines were determined. With respect to Edwin, the process exceeded the four-month period established by Local 1269's constitution and mandated by section 101(a)(4) of the LMRDA.

In addition, with respect to appeal rights, Local 1269's constitution requires a union member assessed a fine in excess of $25 to commence payments of $20 per month within fifteen days of the order assessing the fine as a precondition of any appeal. Although Local 1269 determined the amount of the fines on April 6, 1984, it delayed sending notification to the Vikmans until April 12, 1984. The record does not establish when Linder deliv-

ered a copy of the April 12, 1984, letter to Duane, but Local 1269 did not reply to the notice of appeal sent by Duane. Although Duane did not strictly comply with the appeal provisions of Local 1269's constitution, the evidence of Local 1269's hostility to him as well as to Edwin supports the trial court's determination that pursuit of any internal union remedies by the Vikmans would have been futile. The jury reached a similar conclusion.

Article XXVII, section 5, of Local 1269's constitution contains the following provisions:

> The trial board shall proceed with the case not later than forty-five (45) days from the date the charges were filed. The board shall grant a reasonable delay to the accused when it feels the facts or circumstances warrant such a delay. The accused shall be granted a fair and impartial trial. He must, upon request, be allowed an I.B.E.W. member to represent him.

The only evidence considered by the trial board at the hearing concerning the Vikmans' conduct consisted of statements made by Pusateri. He attributed his information to statements made to him by Linder. Pusateri knew Linder's statements represented only Linder's assumptions. Linder did not inform Pusateri that the Vikmans had worked only a few days for Mountain Bell; that they did so only because they had been given erroneous information concerning the availability of medical benefits by a Mountain Bell representative; and that upon learning from Linder that the medical benefits would not terminate during the strike, Edwin told Linder that the Vikmans would immediately cease working for Mountain Bell. Linder also informed another Local 1269 officer that Local 1269 was going to "get" the Vikmans. In addition, the facts that Local 1269 selected a California venue for the hearing, despite Edwin's request for a Colorado venue; that Local 1269 did not appoint a union member

to represent Edwin, as Edwin requested, or continue Edwin's hearing until such appointment could be made; and that Local 1269 informally accorded special treatment to Joanne Miller, the only other union member who faced disciplinary action for working during the strike, support the trial court's conclusion that no reasonable jury could conclude otherwise than that Local 1269 did not provide the Vikmans full and fair hearings.

We recognize that in *Allander v. Carpenters District Council,* 145 Colo. 164, 358 P.2d 8 (1960), we concluded that a union member could not obtain judicial relief from the union's imposition of a fine and expulsion from office because the union member did not adequately pursue available internal union appellate remedies. In *Allander,* however, the trial court concluded that the union member had not shown any reasonable cause for failing to pursue all of his appellate remedies. *Id.* at 169–70, 358 P.2d at 11. In this case, the trial court did determine that the exhaustion doctrine should not be applied to the Vikmans.[11]

### E

As an alternative ground in support of the court of appeals' judgment, Local 1269 suggests that the trial court failed to apply the appropriate legal standard in entering a partial directed verdict in favor of the Vikmans on the issue of breach of the union constitution. The court of appeals' opinion acknowledges Local 1269's argument on appeal that the trial court "was mistaken in ruling that, as a matter of law, [the Vikmans] were not afforded a fair union hearing." *Vikman,* 854 P.2d at 1304. However, the court of appeals' conclusion that the trial court erroneously entered judgment against Local 1269 on the strike fine claims appears to be based solely on an analysis of the exhaustion issue. In its cross-petition for certiorari, which was denied, Local 1269 did

---

11. There is an anomaly in the fact that the trial court elected to submit the issue of futility to the jury in the context of the Vikmans' pursuit of their contract counterclaims even though it had previously determined that the doctrine of exhaustion of internal union remedies was not applicable to the Vikmans' efforts to defend against Local 1269's strike fine claims. The decision was driven in part by Local 1269's position that fact issues for jury resolution remained with regard to whether Edwin was given notice of the executive committee's April 6, 1984, action. The submission of these issues to the jury benefitted Local 1269, and the parties have not suggested that the decision was inappropriate.

not argue that the trial court employed an erroneous legal standard when it in effect entered a partial directed verdict in favor of the Vikmans on the issue of whether Local 1269 breached its constitution. Nevertheless, we will address the question of the propriety of the trial court's partial directed verdict. *See Smith v. Phillips,* 455 U.S. 209, 215 n. 6, 102 S.Ct. 940, 945 n. 6, 71 L.Ed.2d 78 (1982); *Farmers Group, Inc. v. Williams,* 805 P.2d 419, 428 (Colo.1991).

In granting the Vikmans' motion for directed verdicts against Local 1269 on the latter's strike fine claims, the trial court stated as follows:

> Given in the light—in the best possible light of [Local 1269], it—it simply was not a fair trial. . . . [I]n the event that [the jury] held that was a fair trial or that these proceedings were fair, would that withstand a Motion NOV? The answer is, it would not. . . . I can't see there was a fair trial here.

We agree with the trial court that no reasonable jury could find that Local 1269 afforded the Vikmans a fair and impartial trial. *French v. Haarhues,* 132 Colo. 261, 266–67, 287 P.2d 278, 281 (1955); *Nelson v. Centennial Casualty Co.,* 130 Colo. 66, 72, 273 P.2d 121, 123 (1954). The evidence is uncontradicted that Gerald Linder knowingly withheld accurate information concerning the Vikmans' activities from the trial board. The prejudicial and improper actions by Local 1269 with respect to the Vikmans stands in sharp contrast to Local 1269's conduct with respect to Joanne Miller.

### F

In reversing the jury's verdicts on the Vikmans' outrageous conduct counterclaims as well as on the contract counterclaims, *see Vikman,* 854 P.2d at 1304, the court of appeals apparently assumed that the exhaustion doctrine of section 101(a)(4) of the LMRDA is applicable to the former as well as to the latter type of claims. The parties have not briefed this issue, and we need not

decide it here because the question of the applicability of the exhaustion doctrine to the Vikmans' tort claims has not been preserved for review.

At the conclusion of the Vikmans' presentation of evidence, Local 1269 moved to dismiss the Vikmans' "claims" on three grounds: federal preemption; exhaustion of union remedies; and lack of evidence regarding union ratification, endorsement, approval, or condonation of any tortious conduct by union members. With respect to the exhaustion issue, Local 1269 asserted that in *Gesink v. International Association of Machinists & Aerospace Workers,* 831 F.2d 214 (10th Cir. 1987), the court held that a union member cannot sue his or her union "for outrageous conduct and that sort of thing." At the conclusion of all of the evidence, Local 1269 moved for the entry of a directed verdict against Duane on all of his counterclaims on the ground that he failed to exhaust available union remedies,[12] again relying on *Gesink* and on *Allander.* Local 1269 also moved for the dismissal of the willful breach of contract counterclaims of both defendants on evidentiary grounds. Local 1269 did not renew its motion for directed verdict against Edwin on his contract and tort counterclaims on the ground of failure to exhaust remedies.

While at trial Local 1269 argued that the exhaustion doctrine barred Duane from asserting any counterclaims, the question of the applicability of the exhaustion doctrine to the Vikmans' outrageous conduct counterclaims was not submitted to the jury. More importantly, Local 1269's notice of appeal did not raise that question. The notice set forth only two issues with respect to the applicability of the exhaustion doctrine: whether the trial court erred in rejecting Local 1269's argument that the Vikmans were barred from contesting the strike fine claims because they failed to exhaust their internal union remedies, and whether the trial court erred in not entering a directed verdict against Duane on his willful breach of contract counterclaim. To the extent the court

---

12. As previously noted, Local 1269 also at that time moved for the entry of a directed verdict on its strike fine claim against Duane on the basis of the exhaustion doctrine. Local 1269 also assert-

ed that an issue of fact regarding whether Edwin received notice of Local 1269's final determination required jury resolution.

of appeals purported to reverse the jury verdicts in favor the Vikmans on their outrageous conduct counterclaims, the court addressed issues not preserved for review. Accordingly, that portion of the court of appeals decision must be reversed.[13]

### III

The Vikmans contend that the court of appeals erred in reversing the jury verdict of their tort counterclaims on the ground that the trial court should have instructed the jury that Local 1269's authorization or ratification of the actions of its members must be established by clear proof. We agree.

At the conclusion of the evidentiary portion of the case Local 1269 moved to dismiss the Vikmans' counterclaims on the ground, *inter alia*, that there was no clear proof that any conduct of its members other than the assessment of the fines had been endorsed, ratified, approved, or condoned by Local 1269. Local 1269 argued that any involvement by it in any tortious conduct of its members must be established by "clear proof, more than a mere preponderance." Concluding that regardless of what standard of proof was applicable there was sufficient evidence to justify submission of the Vikmans' tort counterclaims to the jury, the trial court denied the motion.

Local 1269 subsequently objected to an instruction stating that the Vikmans were required to prove their tort counterclaims by a preponderance of the evidence standard. In asserting that any liability on its part for the conduct of its members must be established by clear proof, Local 1269 relied upon the following pertinent language of 29 U.S.C. § 106:

No officer or member of any association or organization, and no association or organization participating or interested in a labor dispute, shall be held responsible or liable in any court of the United States for the unlawful acts of individual officers, members, or agents, except upon clear proof of actual participation in, or actual authorization of, such acts, or of ratification of such acts after actual knowledge thereof.

29 U.S.C. § 106 (1988). We conclude that the trial court appropriately rejected Local 1269's argument.

■ It must first be observed that the above-quoted statute by its terms applies only to proceedings brought in courts of the United States. Title 29 U.S.C. § 113(d) defines a "court of the United States" as "any court of the United States whose jurisdiction has been or may be conferred or defined or limited by Act of Congress...." 29 U.S.C. § 113(d) (1988); *American Dredging Co. v. Local 25, Marine Div., Int'l Union of Operating Eng'rs*, 338 F.2d 837, 850–56 (3d Cir. 1964). Because this case was not tried in a federal court, the statute is not directly applicable. *Hiestand v. Amalgamated Meatcutters*, 233 Kan. 759, 666 P.2d 671, 674–75 (1983).

■ Local 1269 asserts alternatively that as a matter of policy this court should adopt a clear-proof standard for cases such as this. We disagree.

Local 1269 contends that because unions should not be held liable for unauthorized torts committed by individual members thereof in connection with labor disputes, states should adopt the clear-proof standard established by 29 U.S.C. § 106 to discourage forum shopping by plaintiffs. There are sev-

**13.** It is noteworthy that in *Gesink v. International Ass'n of Mach. & Aerospace Workers*, 831 F.2d 214 (10th Cir.1987), the court affirmed *per curiam* the trial court's conclusion, *inter alia*, that a union member was barred from claiming a violation of 29 U.S.C. § 411(a)(5) because he refused to participate in the union proceedings he challenged. That claim was based on the allegation that the decision of the union to suspend the member from holding union office for five years was rendered without due process of law, in violation of the LMRDA. None of the claims asserted by the plaintiff in *Gesink* were state law tort claims. Furthermore, the court in *Gesink* concluded that "the trial court exercised sound discretion in declining to entertain the [LMRDA due process] claim for failure to exhaust proper internal union remedies." *Gesink*, 831 F.2d at 217. The decision does not support the proposition that the exhaustion doctrine of § 101(a)(4) of the LMRDA is applicable to state tort claims based on conduct distinct from any asserted breach of contract claims.

eral difficulties with this argument. In the first place, the Vikmans' outrageous conduct counterclaims are not "labor dispute[s]" as contemplated by 29 U.S.C. § 106. Congress has defined the term "labor dispute" as follows:

.(c) The term "labor dispute" includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee.

29 U.S.C. § 113(c) (1988). Pursuant to this provision, a "labor dispute" is primarily characterized as a controversy over terms of employment. While the term may also apply to conduct occurring during a strike period and disputes over the effects of a work-stoppage on employment status, the post-strike actions of Local 1269 giving rise to the state tort counterclaims asserted by the Vikmans are of a different character. Resolution of the issues raised by the Vikmans' tort counterclaims will not affect their working conditions or employment status.

The acts of outrageous conduct alleged by the Vikmans in their tort counterclaims against Local 1269 occurred after the strike. None of them related directly or indirectly to any terms or conditions of the Vikmans' employment or the association or representation of anyone in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of their employment. In view of the definitions of the term "labor dispute" in the relevant federal and Colorado statutes, the Vikmans' tort counterclaims against Local 1269 are not labor disputes as contemplated by those statutes. *See, e.g., Denver Milk Producers, Inc. v. International Bhd. of Teamsters*, 116 Colo. 389, 183 P.2d 529 (1947).

Even assuming, *arguendo*, that this case constitutes a "labor dispute" for purposes of 29 U.S.C. § 106, we conclude that the policy of this state with respect to the appropriate burden of proof for civil trials in Colorado courts has been determined by the General Assembly and does not include a heightened

standard of proof of union involvement. The Colorado Labor Peace Act contains no provision similar to 29 U.S.C. § 106 imposing a heightened standard of proof with regard to the liability of labor unions for the conduct of its members. In contrast, that statute contains the following pertinent language:

(a) "Labor dispute" means any controversy between an employer and such of his employees as are organized in a collective bargaining unit concerning the rights or process or details of collective bargaining. The entering into of a contract for an all-union agreement or the refusal of an employer to enter into an all-union agreement shall not constitute a labor dispute. It shall not be a labor dispute where the disputants do not stand in the proximate relation of employer and employee. No jurisdictional dispute or controversy between two or more unions as to which of them has or shall have jurisdiction over certain kinds of work; or as to which of two or more bargaining units constitutes the collective bargaining unit as to which the employer stands impartial or ready to negotiate or bargain with whichever is legally determined to be such bargaining unit, shall constitute a labor dispute.

§ 8–3–104(13)(a), 3B C.R.S. (1986). The Colorado Labor Peace Act also contains the following provision:

It is declared to be the common law of the state that ... no act which under the common law or statutes of this state is a wrongful act for which any person has a remedy against the wrongdoer if done by one person is any less a remedial wrong if done by two or more persons or corporations in concert, nor shall the injured person be denied relief in the courts of this state in law or equity except as such relief may be expressly limited by statute.

§ 8–3–102(1)(f), 3B C.R.S. (1986). The General Assembly has thus established that, in general, the burden of proof standard imposed upon parties to civil actions in Colorado courts is the standard of a preponderance of the evidence. Had the General Assembly desired to require a standard other than the preponderance of the evidence standard in cases alleging ratification of or participation

in tortious acts of others, it no doubt would have indicated such intent in section 8–3–102(1)(f), 3B C.R.S. (1986). It did not do so.

Several courts have considered the question of the appropriate burden of proof of labor union ratification of or participation in tortious conduct of union members occurring during labor disputes. *See, e.g., United Aircraft Corp. v. International Ass'n of Machinists,* 161 Conn. 79, 285 A.2d 330 (1971), *cert. denied,* 404 U.S. 1016, 92 S.Ct. 675, 30 L.Ed.2d 663 (1972); *UMW v. Eastover Mining Co.,* 551 S.W.2d 245 (Ky.1977); *Melancon v. United Ass'n of Journeymen,* 386 So.2d 669 (La.App.1980); *Sowels v. Laborers' Int'l Union,* 112 Mich.App. 616, 317 N.W.2d 195 (1981); *Gonzales v. Oil, Chem. & Atomic Workers Int'l Union,* 77 N.M. 61, 419 P.2d 257 (1966); *Tulsa Gen. Drivers, etc. Union v. Conley,* 288 P.2d 750 (Okla.1955); *Freeport Transp., Inc. v. International Bhd. of Teamsters,* 523 Pa. 491, 568 A.2d 151 (1990); *Gajkowski v. International Bhd. of Teamsters,* 519 Pa. 320, 548 A.2d 533 (1988); *Hinote v. Oil, Chem. & Atomic Workers Int'l Union Local 4–23,* 777 S.W.2d 134 (Tex.Ct.App. 1989). Many of those decisions are based on state statutory provisions containing language similar to 29 U.S.C. § 106. *See, e.g., United Aircraft Corp.,* 285 A.2d at 335–37 (referring to Conn.Gen.Stat. § 31–114 (1993)); *Freeport Transp. Inc.,* 568 A.2d at 153–54 (relying on *Gajkowski* ); *Gajkowski,* 548 A.2d at 539 (referring to Pa.Stat.Ann. tit. 43, § 206h (1937)). Other courts have applied principles of general agency law, without referring to 29 U.S.C. § 106 or to any state statute. *See, e.g., Tulsa Gen. Drivers,* 288 P.2d at 753–54; *Gonzales,* 419 P.2d at 262. In *Eastover Mining, Melancon,* and *Sowels* the courts concluded, without discussing state statutes, that the standard of proof for holding a union vicariously liable should be more demanding than in other cases.

Three courts have directly addressed the question of whether the heightened standard of proof established by 29 U.S.C. § 106 for federal court trials of union disputes should be adopted in state court actions in the absence of a state legislative analog to the federal statute. *Carter–Glogau Labs., Inc. v. Construction, Prod. & Maintenance Laborers' Local 383,* 153 Ariz. 351, 736 P.2d 1163 (App.1986); *J.R. Norton Co. v. General Teamsters Local 890,* 208 Cal.App.3d 430, 256 Cal.Rptr. 246 (1989), *cert. denied,* 493 U.S. 894, 110 S.Ct. 242, 107 L.Ed.2d 193 (1989); *Hiestand v. Amalgamated Meatcutters,* 233 Kan. 759, 666 P.2d 671 (1983). All of these courts concluded that 29 U.S.C. § 106 does not bind state courts in view of the restricted definition of "courts of the United States" contained in 29 U.S.C. § 113(d). All of these courts further concluded that in the absence of state statutory authority, the question of whether persons seeking damages allegedly resulting from the tortious conduct of union members should be held to a heightened burden of proof standard is a question of state public policy.

As noted above, the Colorado Labor Peace Act contains no such provision similar to 29 U.S.C. § 106. Moreover, section 8–3–102(1)(f), 3B C.R.S. (1986), indicates a legislative intent to hold labor unions to the same standard as individual wrongdoers. We conclude that the public policy established by the General Assembly precludes judicial imposition of a heightened burden of proof on a person seeking remedies against a labor union for allegedly tortious conduct.

### IV

The court of appeals rejected Local 1269's contention on appeal that the trial court erred in denying Local 1269's motion to dismiss the Vikmans' outrageous conduct counterclaims on the ground that such claims were preempted by the NLRA. In so doing, the court of appeals discussed at length the Supreme Court's decision in *Farmer v. United Brotherhood of Carpenters and Joiners, Local 25,* 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977).

In *Farmer,* the Court held that in adopting an exclusively federal regulatory scheme for resolution of employment discrimination claims in the NLRA, Congress did not intend to prohibit union members from pursuing state-created remedies in state courts for conduct allegedly constituting intentional infliction of emotional distress. *Id.* at 304–06, 97 S.Ct. at 1065–66. However, the Court emphasized that state court juries should be

carefully instructed to ensure that state court verdicts are not based on conduct that constitutes employment discrimination and therefore is subject to the exclusive regulatory scheme established by the NLRA. *Id.* at 305 n. 13, 97 S.Ct. at 1066 n. 13. The Court recognized that in some circumstances state court cases asserting violation of state tort law might to some extent threaten interference with the exercise of exclusive jurisdiction by the National Labor Relations Board, but concluded that when particular conduct might provide the basis for both federal and state proceedings, the state forum is not preempted if the state's interests in protecting its citizens are substantial and those interests do not unduly threaten interference with federal regulatory schemes. *Id.* at 305, 97 S.Ct. at 1066.

The *Farmer* Court did not promulgate mandatory jury instructions for the guidance of state courts faced with the task of assuring that a jury verdict will not be rendered to remedy discriminatory labor practices which are subject to exclusive federal jurisdiction. In this case, the court of appeals, having already reversed the jury's verdicts on the Vikmans' outrageous conduct counterclaims, in effect directed the trial court to give careful consideration to the *Farmer* issue in instructing the jury on retrial. Without discussing any of the instructions actually given by the trial court in this case, the court of appeals stated as follows:

> Thus, in determining a damage award for outrageous conduct, the jury may not be allowed to consider federally protected union actions related to normal strike activity, such as carrying strike signs, or normal union grievance and fine procedures. We therefore instruct the trial court, upon remand, to issue additional jury instructions to this effect.

*Vikman,* 854 P.2d at 1306.

It is unlikely that the court of appeals viewed the actual instructions given to the jury in this case to be so deficient in light of *Farmer* as to constitute an independent basis for reversal of the jury's verdicts on the Vikmans' outrageous conduct counterclaims. In all probability, the court sought to ensure avoidance on retrial of any instructional un-

certainty, having held, correctly, that the Vikmans' outrageous conduct counterclaims were not preempted by the NLRA. Nevertheless, we granted certiorari to consider the Vikmans' contention that the court of appeals "erred in reversing the jury's determination and ordering on remand that the [trial] court give additional instructions upon *Farmer v. United Bhd. of Carpenters, Local 25,* 430 U.S. 290 [97 S.Ct. 1056, 51 L.Ed.2d 338] (1977)."

■ We disagree with the Vikmans' suggestion that the court of appeals in some fashion misconstrued *Farmer.* The court of appeals appropriately described the *Farmer* court's concern that jury instructions must adequately protect unions from the prospect of jury decisions based improperly upon evaluations of conduct that is subject only to exclusive federal regulation. However, we also reject Local 1269's argument that the jury instructions given in this case did not satisfy the *Farmer* test.

■ The trial court and the parties discussed the implications of *Farmer* at length at trial; all were well aware of the implications of that decision. Instruction No. 9 informed the jury that Local 1269 could not be found liable for exercising its legal right to strike, to ask union members to picket, to assess fines against union members for working during the strike, or to file actions to collect assessed fines unless such conduct would otherwise constitute extreme and outrageous conduct. Instruction No. 28 informed the jury that Local 1269 could not be held liable solely because of disciplinary acts and criticism taken against the Vikmans by Mountain Bell officials. Instruction No. 28 also informed the jury that it could consider evidence of Local 1269's participation in Mountain Bell's disciplinary actions as part of the totality of the conduct for which Local 1269 was allegedly responsible in addressing the Vikmans' counterclaims for outrageous conduct.

■ In determining whether jury instructions adequately inform the jury of the legal principles to be applied to the facts of the case, all of the instructions should be considered as a whole. *Armentrout v. FMC*

*Corp.,* 842 P.2d 175, 186 (Colo.1992); *Montgomery Ward & Co., Inc. v. Kerns,* 172 Colo. 59, 63, 470 P.2d 34, 36–37 (1970). In our view, Instruction Nos. 9 and 28 adequately ensured that the jury would not determine liability or damages on the Vikmans' outrageous conduct counterclaims on the basis of discriminatory labor practices which are subject to exclusive federal jurisdiction pursuant to the NLRA.

## V

For the foregoing reasons, the judgment of the court of appeals is reversed. The case is remanded to that court with directions to reinstate the judgments of the trial court.

MULLARKEY, J., specially concurs in part and dissents in part.

ROVIRA, C.J., joins in part I of the special concurrence.

Justice MULLARKEY specially concurring in part and dissenting in part.

We granted certiorari to review four issues in this case:

  1. Whether the court of appeals erred in determining that the jury should have been instructed that the petitioners must demonstrate "clear proof" that the respondent·authorized or ratified its members' acts of outrageous conduct;

  2. Whether the court of appeals erred in reversing the jury's determination and ordering on remand that the district court give additional instructions based upon *Farmer v. United Bhd. of Carpenters, Local 25,* 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977);

  3. Whether the court of appeals erred in reversing the district court's grant of a directed verdict against the respondent on its claims for strike fines; and

  4. Whether the court of appeals erred in reversing the jury's determination that the respondent was liable to the petitioners on their counterclaims for breach of contract and outrageous conduct, and instruct-

ing the district court to examine on remand whether the petitioners have standing to bring these counterclaims and to contest the fairness of the respondent's trial proceedings that resulted in the respondent's fines.

I join the majority's holdings on issues 1 and 2 that the Union's authorization or ratification of the tortious acts of its members must be established by a preponderance of the evidence rather than by clear proof and that the jury was properly instructed under *Farmer.* I write separately on issue 1, however, to highlight the affirmative indicators of legislative intent, not discussed by the majority, that the "clear proof" standard should not apply in establishing the vicarious liability of a union for the actions of its members.

I respectfully dissent from the majority's holdings on issues 3 and 4, which affirm the trial court's decision excusing the Vikman's failure to exhaust union remedies and which reinstate the trial court's directed verdict against Local 1269 on its strike fine claims. I would uphold the judgment of the court of appeals and return the case to that court with directions to remand to the trial court for (1) dismissal of the Vikmans' breach of contract defenses and entry of judgment in favor of Local 1269 on its strike fine claims, and (2) a new trial of the Vikmans' counterclaims of willful breach of contract and outrageous conduct.[14]

## I.

### Burden of Proof

As the majority indicates, state courts are not bound to follow the "clear proof" standard required by section 6 of the Norris–LaGuardia Act, 29 U.S.C. § 106 (1988), for establishing ratification or authorization by a union of the actions of union members. Maj. op. at 661. The majority points to the silence of the Colorado Labor Peace Act concerning the burden of proof applicable in such circumstances as indicating legislative intent that the burden of proof in section 6 of the Norris–LaGuardia Act should not apply

**14.** As both Edwin and Duane Vikman assert the same legal arguments, I will discuss the Vikmans' claims separately only when there are material differences in the factual circumstances of their claims.

in state court actions. Maj. op. at 660.[15] While I agree with the majority's conclusion, I wish to point out additional indicators of legislative intent other than the silence of the general assembly.

In 1933, Colorado enacted its own version of the Norris–LaGuardia Act. 1935 Colo. Stat.Ann., ch. 97, secs. 76–87. The act was substantially similar to the federal version and included a provision closely modeled on section 6 of the federal act.[16] That section, however, did not incorporate the clear proof standard of the federal act. Instead, it required participation, authorization or ratification to be demonstrated "by the weight of evidence and without the aid of any presumptions of law or fact." *Id.* § 79. Not only did the legislature decline to adopt the "clear proof" language of the federal act in the state statute, but the analogous state provision was repealed upon enactment of the Labor Peace Act of 1943. *See* Ch. 131, sec. 26, 1943

Colo.Sess.Laws 417. The Labor Peace Act contains no provisions regarding the burden of proof to be applied in any action brought under its terms.

While there is no legislative history available concerning the enactment of the Labor Peace Act, the terms of the Act indicate a shift in policy which is consistent with a more relaxed standard for proving union participation in tortious acts by its members. While "[t]he driving force behind § 6 [of the Norris–LaGuardia Act] ... was the fear that unions might be destroyed if they could be held liable for damage done by acts beyond their practical control," *Gibbs*, 383 U.S. at 736–37, 86 S.Ct. at 1144, the declared policy of the Labor Peace Act recognizes not only the interests of the employee, but also the interests of the employer and the public in labor relations. 1935 Colo.Stat.Ann., ch. 97, sec. 94(1). The Labor Peace Act narrowed

---

15. The majority also asserts that section 6 of the Norris–LaGuardia Act is not applicable in this case because tortious conduct of the union and its members toward the Vikmans is not a "labor dispute" as defined in the federal act. Maj. op. at 660. The majority misreads the statute. Section 6 applies to an association or organization "participating or *interested in* a labor dispute." 29 U.S.C. § 106. The act provides that

[a] person or association shall be held to be a person participating or interested in a labor dispute if relief is sought against him or it, and if he or it is engaged in the same industry, trade, craft, or occupation in which such dispute occurs, or has a direct or indirect interest therein, or is a member, officer, or agent of any association composed in whole or in part of employers or employees engaged in such industry, trade, craft, or occupation.

29 U.S.C. § 113(b). Under this definition, the I.B.E.W. is clearly an association "interested in" a labor dispute because relief was sought against it, and because it has a direct interest in the industry and in the outcome of the dispute. Thus, by its own terms the federal act would apply to disputes such as this one.

This interpretation is supported by *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). In *Gibbs*, the Supreme Court applied section 106 to state law tort claims brought by a mine supervisor who was harassed by union members. The supervisor was employed to open a second mine after the mining company closed the mine where the union members had been employed. As in this case, the mine supervisor's claims against the union did not concern issues of association or representation in negotiating terms and conditions of employment, nor the actual terms of the mine su-

pervisor's or the union members' employment, as required under the definition of "labor dispute" in the federal statute. 29 U.S.C. § 113(c). The court nevertheless considered the situation to be governed by section 6.

16. The federal act provides:

No officer or member of any association or organization, and no association or organization participating or interested in a labor dispute, shall be held responsible or liable in any court of the United States for the unlawful acts of individual officers, members, or agents, except upon *clear proof* of actual participation in, or actual authorization of, such acts, or of ratification of such acts after actual knowledge thereof.

29 U.S.C. § 106 (emphasis added). The analogous provision of the Colorado act read as follows:

No officer or member of any association or organization, and no association or organization participating or interested in a labor dispute (as these terms are herein defined) shall be held responsible or liable ... for the unlawful acts of individual officers, members, or agents, except upon proof *by the weight of evidence and without the aid of any presumptions of law or fact,* both of (a) the doing of such acts by persons who are officers, members or agents or any such association or organization, and (b) actual participation in, or actual authorization of, such acts, or ratification of such acts after actual knowledge thereof by such association or organization.

1935 Colo.Stat.Ann., ch. 97, § 79 (emphasis added).

the scope of union conduct protected under the Norris–LaGuardia Act during labor disputes by limiting the definition of labor dispute. § 94(16). The Act also defined certain employee, as well as employer, activities as unfair labor practices. § 94(6). After its passage, the Labor Peace Act was characterized as "an attempt on the part of government to swing the pendulum in the other direction—to increase the protection afforded the employer and render both capital and labor more responsible to the interest of the public." *See generally,* Alvin Weinberger, *An Analysis of the Colorado Labor Peace Act,* 19 Rocky Mtn.L.Rev. 359, 362 (1947). Application of a more relaxed standard of proof for proof of union participation is consistent with this recognition by the legislature of the need to protect employer and public interests in labor relations.

The final indicator of legislative intent contrary to application of a clear proof standard is the 1971 legislative mandate that:

> Any provision of the law to the contrary notwithstanding ... the burden of proof *in any civil action* shall be by a *preponderance of the evidence.*

§ 13–25–127, 6A C.R.S. (1987) (emphasis added). The sole exceptions to this statutory rule are for actions "determining the validity of any legislative enactment," actions where "exemplary damages" are awarded, and where "execution [of the judgment is] against the body of a party against whom the claim is asserted." *Id.* By its own terms, this statute substitutes the "preponderance of the evidence" for any other standard in all civil actions. Moreover, the legislature has provided no alternative standard under the Labor Peace Act, even though it has amended provisions of the Labor Peace Act numerous times since the enactment of section 13–25–127. *See* Ch. 221, sec. 1, 1971 Colo.Sess. Laws 887; Ch. 99, sec. 27, 1972 Colo.Sess. Laws 561; Ch. 34, sec. 12, 1976 Colo.Sess. Laws 297; Ch. 61, sec. 1, Ch. 76, secs. 1, 2, 3, 4, 1977 Colo.Sess.Laws 305, 419, 422, 423; Ch. 64, secs. 24, 26, 28, 125, 1986 Colo.Sess. Laws 470, 471, 502; Ch. 172, sec. 6, 1987 Colo.Sess.Laws 937.

Together, these actions by the general assembly demonstrate its intent to require proof of union ratification or authorization of its members' tortious acts by a "preponderance of the evidence" rather than by "clear proof."

## II.

### Exhaustion

The Vikmans argue, both as a defense to Local 1269's action to enforce strike fines and as a counterclaim against the Local, that Local 1269 breached the union constitution in its imposition of strike fines. The majority accepts the trial court's conclusion that "the utilization of Local 1269's procedures by the Vikmans would be futile" with respect to both the Vikmans' defense and their counterclaims.[17] Thus, the majority holds that the Vikmans were not required to exhaust union remedies before seeking a judicial remedy. Maj. op. at 656.

While I agree with the majority that the trial court's resolution of the issue of exhaustion is entitled to deference, I would find that the trial court abused its discretion in declining to require either Duane or Edwin Vikman to exhaust union procedures with respect to his defenses to the union's strike fine claims. However, I would uphold the trial court's decision to excuse the Vikmans' failure to exhaust union remedies for their counterclaim of willful breach of the union constitution on grounds that union remedies would have been inadequate to grant the Vikmans full relief.

The Supreme Court has held that a court may exercise discretion in determining whether a union member should be prohibited from pursuing judicial remedies before exhausting existing union remedies. *NLRB v. Marine Workers,* 391 U.S. 418, 426, 88 S.Ct. 1717, 1722, 20 L.Ed.2d 706 (1968). On review, then, "the proper inquiry ... is whether [the trial court's] actions were so manifestly arbitrary or unreasonable as to amount to a clear abuse of discretion." *Colorado Nat'l Bank v. Friedman,* 846 P.2d 159,

---

**17.** As the majority points out, the question of whether exhaustion should have been required for the Vikmans' tort claims was not preserved for review.

167 (Colo.1993). "Abuse of discretion" also may indicate that "the appellate court is simply of the opinion that there was commission of an error of law in the circumstances." *Medina v. District Court,* 177 Colo. 185, 186, 493 P.2d 367, 368 (1972). That is the case here.

Factors that a trial court should consider in deciding whether to require exhaustion of internal union remedies include:

> first, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks under § 301 [of the LMRA]; and third, whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim. If any of these factors are found to exist, the court may properly excuse the employee's failure to exhaust.

*Clayton v. Automobile Workers,* 451 U.S. 679, 689, 101 S.Ct. 2088, 2095, 68 L.Ed.2d 538 (1981).[18]

The first of these factors is dispositive for the majority in this case. The majority points to evidence that: the Vikmans did not receive notice of the meeting where the amount of their fines was set; Local 1269

delayed sending notification of the fines; the trial board relied on information from a biased source to determine the number of days the Vikmans worked during the strike; the trial board selected a California venue for the hearing despite the Vikmans' residence in Colorado; Local 1269 failed to respond to Duane Vikman's improperly filed notice of appeal; Gerald Linder, a member of Local 1269's executive committee, stated that the local was going to "get" the Vikmans; the trial board failed to appoint a union member to represent Edwin Vikman during his hearing; and that another member, Joanne Miller, received a better resolution of her strike fine than did the Vikmans. Maj. op. at 657. The majority construes this evidence to prove the futility of further union proceedings.

A finding of futility requires evidence indicating that "union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim." *Clayton,* 451 U.S. at 689, 101 S.Ct. at 2095. "Bias" in the proceedings, *Johnson v. General Motors Corp.,* 641 F.2d 1075, 1079 (2d Cir.1980), or that the proceedings are controlled by those against whom the plaintiff is opposed, *Semancik v. United Mine Workers,* 466 F.2d 144, 150 (3d Cir.1972), will also support a finding of futility.

The evidence in the record does not support a finding of futility, however.[19] The

---

**18.** 29 U.S.C. § 411 also provides that a union member may be required to exhaust "reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization before instituting legal or administrative proceedings against such organizations...." The Vikmans argue that this provision forbids any defense of exhaustion by Local 1269 because the Vikmans did not receive notification of the results of their hearings until more than six months after charges against them were initially filed. I disagree.

The four-month time period begins when the action complained of is taken. *See Rekant v. Shochtay–Gasos Union,* 205 F.Supp. 284, 290 (E.D.Pa.), *rev'd on other grounds,* 320 F.2d 271 (3d Cir.1962). The judicial remedy for wrongful action by the union ripens under this provision after pursuit of union hearing procedures for a period exceeding four months. *Schuchardt v. Millwrights & Machinery Erectors Local Union,* 380 F.2d 795, 797 (10th Cir.1967).

In this instance, the action complained of accrued when the union imposed strike fines on the

Vikmans. However, the only action that either Vikman took was a letter from Duane Vikman to the president of the trial board, copied to the International President and Vice–President, which threatened litigation if the fines were not dismissed. This letter did not request an appeal proceeding, nor did it comply with the requirements of an appeal under the union constitution. Edwin Vikman did nothing and claims never to have received his notice of fine, although the recording secretary testified that she received the return receipt. Neither Vikman otherwise attempted to pursue the internal union appeal procedures outlined in the notice of fine. Instead, they merely refused to pay the fines. This provision thus does not provide a source of relief from the general requirement that union members exhaust union remedies before invoking judicial action.

**19.** The question of futility was submitted to the jury in the form of the following instruction:

> If a union member does not participate in the union's trial board procedure, or fails to ap-

mere fact that investigatory and adjudicatory functions are performed by the same body does not indicate the bias of adjudicatory proceedings. *Null v. Carpenters Dist. Council,* 239 F.Supp. 809, 815 (S.D.Tex.1965) ("The fact that the District Council from whose members the Trial Committee was selected, ordered an investigation of the plaintiff's activities and the filing of charges if the investigation disclosed that the filing of charges was merited does not establish bias or impartiality on the part of any members of the trial committee."). Nor is futility proven by Duane Vikman's decision not to attend his hearing because he believed that paying the fine imposed would be less expensive than attending the hearing. His choice not to participate was merely a strategic decision on his part. Moreover, the fact that union proceedings against another employee, Joanne Miller, may have had a more favorable outcome than the Vikmans' proceedings is not necessarily indicative of special treatment or bias. Like the Vikmans, Joanne Miller decided not to attend her hearing in California and was sued by the union for collection of strike fines. Unlike the Vikmans, Ms. Miller settled with the union for less than the full amount of the fines assessed against her.[20] While the evidence may demonstrate that some hostility and bias was shown toward the Vikmans by Gerald Linder,[21] and that the proceedings were inconvenient for the Vikmans, it does not show bias or hostility toward the Vikmans by the Local 1269 trial board members, or by the International Vice–President who would hear the Vikmans' appeals.

Based on the misapplication of the law to the facts in this case, I would find that the trial court abused its discretion in declining to require the Vikmans to exhaust their union remedies before asserting breach of the union constitution as a defense to the union's strike fine claims. Accordingly, I would return this issue to the court of appeals with directions to remand to the trial court for dismissal of all defenses to the union's strike fine claims and entry of judgment for the union.

With respect to the Vikmans' willful breach of contract counterclaim, however, I find that exhaustion is not required. Where "the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks," a trial court need not require exhaustion. *Clayton,* 451 U.S. at 689, 101 S.Ct. at 2095. In *Clayton,* the court specifically looked to the availability of monetary relief as one factor indicating the adequacy of union remedies. *Id.* at 690, 101 S.Ct. at 2095. In Colorado, we have also held that union remedies need not be exhausted where they do not provide compensation for damages. *Harper v. Gribble,* 143 Colo. 502, 505–06, 355 P.2d 526, 528 (1960).

In this instance, the Vikmans requested actual and punitive damages against Local 1269 for willful breach of the union constitution. Under the union constitution, the sole remedies available for violation of any provision are assessment, removal from office, and/or suspension, or expulsion of the member or officer convicted of the violation. Art. 27, § 1. The union does not authorize an award of damages and thus could not provide the Vikmans the relief they seek. Accordingly, I would not require exhaustion with respect to the Vikmans' willful breach of contract counterclaims. Because I find that exhaustion is not required with respect to the Vikmans' breach of contract counterclaims, I must address the propriety of the trial

---

peal the trial board's decision, or fails to follow the rules of appeal set forth in the union's construction, he has failed to exhaust his available remedies. If it is futile for a union member to exhaust his remedies, he is not required to do so.

The instructions did not indicate what evidence the jury could consider to make this finding, and did not define "futility." As a consequence, the jury's finding of futility does not affect my analysis of this issue.

**20.** There is also evidence in the record that she may have paid the full amount of her fines.

**21.** While Gerald Linder was a member of the Local 1269 executive committee, he was not a member of the trial board which presided over the Vikmans' disciplinary hearings. Furthermore, Linder's influence over the trial board was limited. Linder testified that he had requested more lenient treatment of Joanne Miller to no avail.

court's partial directed verdict in favor of the Vikmans on this issue.

## III.

### Willful Breach of the Union Constitution

The majority upholds the directed verdict entered by the trial court in favor of the Vikmans on the issue of breach of the union constitution both as a defense to the union strike fine claims and as a counterclaim. The majority gives only the most cursory treatment to the partial directed verdict on the Vikmans' willful breach of contract counterclaim. It engages in no separate analysis of the four contract provisions alleged to have been breached and does not apply the proper legal test for construction of the union constitution. I would hold that the trial court improperly entered a directed verdict on the issue of Local 1269's breach of the union constitution. For the foregoing reasons, I respectfully dissent from the majority holding in part II.E.

Provisions in union constitutions and by-laws defining punishable conduct and the procedures for trial and appeal constitute a "contract" between member and union. *NLRB v. Allis–Chalmers Mfg.*, 388 U.S. 175, 182, 87 S.Ct. 2001, 2007, 18 L.Ed.2d 1123 (1967). The interpretation of a contract is a question of law, and an appellate court need not defer to the interpretation of the trial court. *Fibreglas Fabricators, Inc. v. Kylbert*, 799 P.2d 371, 374 (Colo.1990) (citation omitted). While a trial court's evidentiary findings are generally accorded deference by an appellate court, in reviewing a trial court's

directed verdict, we must "view the evidence in a light most favorable to [the non-moving party] and determine whether, when so viewed and all reasonable inferences are drawn to support [the non-moving party], a reasonable jury could find for [the non-moving party]." *Palmer v. A.H. Robins*, 684 P.2d 187, 218 (Colo.1984).

Under Colorado law, the purpose of construing and interpreting a written agreement is to ascertain the intent of the parties, which is to be determined primarily from the language of the instrument itself. Express provisions of a document should not be rewritten merely because of the contrary assertions of a party to the agreement, and a court must enforce an unambiguous contract as written and in accordance with its terms. *Lowell Staats Mining Co. v. Pioneer Uravan, Inc.*, 596 F.Supp. 1428, 1430 (D.Colo.1984). Courts generally give deference to the union's own interpretation of its constitution and will not invalidate the union interpretation unless it is "unreasonable." *Newell v. I.B.E.W.*, 789 F.2d 1186, 1189 (5th Cir.1986); *Stelling v. I.B.E.W.*, 587 F.2d 1379, 1389 (9th Cir.1978), *cert. denied*, 442 U.S. 944, 99 S.Ct. 2890, 61 L.Ed.2d 315 (1979); *Local Union No. 657 v. Sidell*, 552 F.2d 1250, 1257 (7th Cir.), *cert. denied*, 434 U.S. 862, 98 S.Ct. 190, 54 L.Ed.2d 135 (1977); *see also Department of Labor v. Aluminum, Brick & Glass Workers Int'l Union*, 941 F.2d 1172 (11th Cir. 1991).[22] None of these standards is applied by the majority in reviewing the trial court's directed verdict on this issue.

The Vikmans allege four breaches of the union constitution.[23] First, they allege that

---

**22.** The Vikmans assert that the deference given to the union's interpretation under this line of cases "flatly contradicts" Colorado law which provides that in cases of ambiguity, contracts "must be strictly construed against the party drafting the contract." *United States Fidelity & Guarantee Co. v. Budget Rent–A–Car*, 842 P.2d 208, 211 (Colo.1992). That may be true, but other values, including national labor policy, prevail. The cases giving deference to union interpretations reflect a well-established policy of judicial non-interference with the internal affairs of unions unless the union's interpretations are unreasonable. *See Allis–Chalmers*, 388 U.S. at 184–92, 87 S.Ct. at 2008–13.

**23.** The relevant provisions of the union constitution provide:

Sec. 3. All charges against a member or members must be presented in writing, signed by the charging party, and specify the section or sections of this Constitution, the bylaws, rules or working agreement allegedly violated. The charges must state the act or acts considered to be in violation, including approximate relevant dates or places.

Sec. 4. Charges against members must be submitted to the [recording secretary].... The [recording secretary] shall immediately send a copy of such charges to the accused member at his last known address together with written notice of the time and place he shall appear before the trial board.

the union failed to specify the possible penalty and approximate relevant dates as required by section 3 of the union constitution. Second, they claim that the union failed to proceed with the case within 45 days as required by section 5. Third, they contend that the union failed to provide Edwin Vikman with a union member to represent him as required by section 5. Finally, they allege that Edwin did not receive a "fair and impartial" or a "full and fair" hearing [24] as required by section 5 because the union refused to hold the hearing in Colorado and because testimony relied upon by the trial board was "demonstrably false." The union responds that (1) the charges were sufficiently specific; (2) the trial board "proceeded" within 45 days by scheduling hearings and sending notices; (3) the requirement to allow a member to have counsel does not require the board to appoint a representative; (4) the constitution does not require the trial board to travel to different states affected by the strike.

I will consider each alleged breach of the union constitution and address the question of whether, after construing the evidence in a light most favorable to Local 1269, a reasonable jury could have found for Local 1269. Because I find (1) that Local 1269's interpretation of the union constitution is reasonable and entitled to deference with respect to each alleged breach, and (2) that upon viewing the facts in the light most favorable to

Local 1269, and upon drawing all inferences in favor of Local 1269, a reasonable jury could conclude that Local 1269's proceedings against the Vikmans did not violate the union constitution,[25] I would hold that the trial court erred in entering a directed verdict in favor of the Vikmans on their breach of contract counterclaims.

a.

Section 3 of the union constitution requires that charges be

presented *in writing, signed by the charging party,* and *specify the section or sections of this Constitution,* the bylaws, rules or working agreement allegedly violated. The charges must *state the act or acts considered to be in violation, including approximate relevant dates or places.*

(Emphasis added). Local 1269 contends that this provision does not require notification of the possible penalty, nor the exact dates on which the violation was charged. As the plain language of the provision supports the union interpretation, I find this to be a reasonable construction and thus entitled to deference.

In this instance, the content of the charges sent to Duane and Edwin Vikman is undisputed. The charges were in writing, in the form of a letter to the recording secretary, Joanne Malik, and were signed by Peter

---

Sec. 5. The trial board shall proceed with the case not later than forty-five days from the date the charges were filed. The board shall grant a reasonable delay to the accused when it feels the facts or circumstances warrant such a delay. The accused shall be granted a fair and impartial trial. He must, upon request, be allowed an IBEW member to represent him.

.    .    .    .    .

Sec. 7. If the accused wilfully fails to stand trial—or attempts to evade trial—the trial board shall proceed to hear and determine the case just as though the accused were present. I.B.E.W. Constitution art. 27, §§ 2, 4, 5, 7.

**24.** 29 U.S.C. § 411 requires that union disciplinary proceedings include a "full and fair hearing." The Vikmans pled a violation of this federal statutory requirement, as well as violation of the requirement of a "fair and impartial" hearing under the terms of the union constitution, as a defense to Local 1269's strike fine claims.

**25.** The jury instruction concerning the directed verdict on the breach of contract claims was as follows:

The Court has determined that, as a matter of law, the procedures followed by the union in imposing fines on Ed and Duane Vikman did not accord the Vikmans a fair and impartial hearing. You are instructed that you must accept this determination. This determination by the Court is not to be construed as willful and wanton conduct. This is for you to decide.

While the jury returned a verdict for and awarded damages of $180,000 and $60,000 respectively to Edwin and Duane Vikman for willful breach of contract, the jury was not allowed to make the preliminary determination of whether Local 1269's conduct in fact breached the union constitution. It was instructed that the Vikman's were treated unfairly and only was allowed to determine whether the Local's conduct was willful and wanton. Thus, the jury verdict does not reflect any resolution of factual disputes involved in the breach of contract questions.

Pusateri, the charging party. The charges specified that the Vikmans[26] were in violation of article 27, sections 1(1), (5), (6), (7), and (17) of the union constitution and quoted the text of each subsection. The charges further stated that "[y]ou are charged with working behind picket lines during the recent strike with Mountain Bell between August 7, 1983, and September 6, 1983 in Boulder, Colorado." Thus, a reasonable jury could conclude that the charges mailed to the Vikmans did not violate the procedural requirements of the union constitution.

b.

Section 5 of the union constitution governs the union disciplinary procedures after charges have been filed. Section 5 requires that "[t]he trial board shall *proceed with the case* not later than forty-five days from the date the charges were filed." The parties dispute the meaning of "proceed with the case" in this context. Local 1269 asserts that, under its interpretation, providing notice and setting a hearing date constitute "proceeding with the case." Since the letters giving the Vikmans notice of the date and place of their hearing and a copy of the charges against them were mailed within ten days of the filing of charges, under Local 1269's interpretation, the union was in compliance with this requirement.

The Vikmans disagree. They argue that the Local's interpretation renders section 4 meaningless. Section 4 provides: "The [recording secretary] shall immediately send a copy of such charges to the accused member at his last known address together with written notice of the time and place he shall appear before the trial board." The Vikmans insist that "Sec. 4 already provides that the IBEW must 'immediately' after receiving

the charge send a copy of the charge 'together with written notice of the time and place he shall appear before the trial board' to the accused. Of necessity, then, Sec. 5 must mean something more than merely sending the charge and notice of hearing." Under their interpretation, proceeding with the case requires a hearing within 45 days. Thus, they conclude that the December 3, 1983, trial date set for Duane, and the March 2, 1984, date set for Edwin failed to comply with the Vikmans interpretation of the 45–day requirement.

In this instance, the Local's interpretation is not unreasonable and does not necessarily create an inconsistency between sections 4 and 5 of the union constitution. Thus, the Local's interpretation is entitled to deference by a reviewing court under applicable law. Section 4 prescribes action to be taken immediately by the recording secretary while section 5 requires the trial board to proceed with the case within 45–days. In order for the recording secretary to provide notice of the hearing, the hearing time, date and place first must be scheduled by the trial board. The 45–day time period, then, modifies "immediately" in section 4 and defines the time limit for scheduling the hearing and providing notice to the union member.

The parties agree that ten days after the charges were filed the recording secretary sent letters that notified the Vikmans of the time, date and place of their hearings, and that included a copy of the charges filed against them. Adopting Local 1269's interpretation of this provision, a reasonable jury could find that, by scheduling the hearing and notifying the Vikmans, Local 1269 satisfied the requirement of section 5 that the trial board "proceed with the case" within 45 days.[27]

---

**26.** Both Edwin and Duane Vikman received identical letters.

**27.** Even under the Vikmans' interpretation, a reasonable jury could find that Local 1269 did not breach the union constitution.

The "performance" element of a breach of contract action means "substantial" performance. Substantial performance occurs when, "although the conditions of the contract have been deviated from in trifling particulars not materially detracting from the benefit the

other party would derive from a literal performance, [the plaintiff] has received substantially the benefit he expected, and is, therefore, bound to pay."
*Western Distributing Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo.1992) (citation omitted); *see also Communication Workers of America v. Drake*, 487 N.E.2d 821, 824–825 (Ind.Ct.App.1986) ("[A] court will not interfere when a procedural rule is not correctly followed unless the complaining member shows that this failure severely impaired his ability to prepare a defense or seriously in-

c.

Section 5 also provides that "[the accused] must, upon request, be allowed an IBEW member to represent him." Edwin Vikman argues that the Local violated this provision by failing, upon his written request, to appoint a union member to represent him during the March 2 hearing. The union interprets this provision to require only that the trial board allow the accused member to be represented by a union member of his choice, not to require the board to appoint a representative.

Again, I find the union's construction to be reasonable and entitled to deference. If the union constitution required the trial board to appoint a union member to represent the accused, it could have been written to say just that. Moreover, the union's interpretation does not render the provision meaningless because it makes clear that (1) the accused member may choose to have a representative present his case and need not present the case himself, and (2) the chosen representative must be a union member, not an attorney.

Neither party disputes that Edwin Vikman failed to arrange for a member to represent him at the hearing. He merely requested, in a letter posted the day before the hearing, that "an IBEW member in good standing present this statement of position on my behalf at the hearing and otherwise act as my counsel." The parties agree that the letter was presented in the hearing but that no union member was otherwise appointed to represent Edwin Vikman. Under the construction of the contract I adopt, the trial board was not required to appoint a member to represent Edwin. Accordingly, a reasonable jury could find that this failure did not constitute a breach of the union constitution.[28]

d.

Section 5 also provides that "the accused shall be granted a fair and impartial trial." Edwin Vikman contends that the trial board's refusal to hold his hearing in Colorado deprived him of a fair hearing because he could not present his case in person or confront adverse witnesses. He also argues that the trial board's bias and prejudice against him is evidenced by its reliance on testimony by Peter Pusateri relating "demonstrably false" information supplied to Pusateri by a "known enemy" of the Vikmans, Jerry Lin-

creased the risk of an erroneous determination by the decision-maker.") (citing *Curtis v. International Alliance of Theatrical Stage Employees*, 687 F.2d 1024, 1029 (7th Cir.1982)); *Buresch v. I.B.E.W.*, 343 F.Supp. 183, 190 (D.Md.1971) ("A failure to comply strictly with the procedural provisions of a [union] constitution would not render the action of the union "void" so long as the "due process" requirement of the LMRDA are satisfied") (citation omitted), *aff'd*, 460 F.2d 1405 (4th Cir.1972).

Construing the facts most favorably to Local 1269, the Local was in substantial compliance with the terms of section 5. The December 3, 1983, hearing date was not an arbitrary date, but rather fell 45 days after the date of the notice letter sent by the recording secretary, and only 55 days after the filing of charges. Thus, even under the Vikmans' interpretation, the delay appears to be the result of a miscalculation rather than willful action on the part of the union. More importantly, it is unlikely that the ten-day delay materially impacted either of the Vikman brothers. Duane did not intend to attend the hearing, and Edwin's lawyer wrote to the Local on November 11, 1983, stating that "at this time ... Mr. Vikman's health would prevent him from traveling to San Francisco for the trial on December 3, 1983."

Furthermore, by delaying Edwin's trial until March 2, 1984, a reasonable jury could find that the Local was in full compliance with its constitution. The union constitution specifically provides that "[t]he board shall grant a reasonable delay to the accused when it feels the facts or circumstances warrant such a delay." The Local's letter notifying Edwin of the new hearing date refers to Edwin's November 11 letter. Local 1269 reasonably could have interpreted the statement in the letter concerning Mr. Vikman's health as a request for a delay of the hearing date.

**28.** I note that, even under the Vikmans' interpretation of the union constitution, a jury could find that the trial board's failure to appoint a union member to represent Edwin Vikman did not constitute a breach of contract. In *O'Brien v. I.B.E.W.*, 443 F.Supp. 1182 (N.D.Ga.1977), the court rejected the plaintiff's claim that the union failed to provide adequate notice of the charges against him stating, "Plaintiff's request for more specific information on the charges, although ignored by the I.B.E.W., came a bit late as it was written one day prior to the I.B.E.W. hearing." *Id.* at 1185.

der. The union counters that its constitution does not require hearings to be held in the state where the accused member is located. It also argues that the evidence of bias presented by the Vikmans requires the court to make credibility determinations that are inappropriate in the context of a directed verdict.

I agree with the union that the determination of whether Edwin Vikman received a "fair and impartial trial" requires the resolution of factual disputes. Construing the facts in a manner most favorable to the Local, I conclude that a reasonable jury could find that the hearing was fair and impartial.

The union constitution does not require the trial board to hold hearings in the state where the accused member is located. Failure to hold the Vikman hearings in Colorado thus is not a per se violation of the union constitution, but rather must be evaluated as impacting the fairness of the proceedings and the Vikmans' opportunity to be heard. The opportunity to be heard must be "tailored to the capacities and circumstances of those who are to be heard." *Stewart v. St. Louis Typographical Union*, 451 F.Supp. 314, 316 (E.D.Mo.1978). In this case, Edwin Vikman joined a union whose headquarters and officers were located in California. In addition, there is no evidence that at the time of the March 2, 1984, hearing date Edwin Vikman was unable to travel to California for the hearing. Nor were the Vikmans singled out in this respect. Local 1269 also scheduled the hearing for Joanne Miller, another Colorado member charged with working during the strike, to take place in California. A reasonable jury could infer from these facts that it was not unfair to ask Mr. Vikman to travel to California for his hearing.

On the question of the impartiality and fairness of the hearing itself, a reasonable jury could also find in favor of Local 1269. An impartial tribunal is the *sine qua non* of full and fair hearing. *Stein v. Mutuel Clerks Guild*, 384 F.Supp. 444 (D.Mass.1974). As discussed earlier, there is no evidence in the record suggesting that the trial board was biased against the Vikmans. In addition, where some evidence is presented supporting charges and the right of confrontation and cross-examination has been afforded the charged member, the accused member has been given a "full and fair" hearing under 29 U.S.C. § 411. *Ritz v. O'Donnell*, 566 F.2d 731, 735–37 (D.C.Cir.1977). However, where a member fails to exercise these rights, they are considered to have been waived. *Id.*

In this instance, there is no allegation that the members of the trial board, or the International Vice–President who would have heard the Vikmans' appeals, were biased against either of the Vikmans. The Vikmans had notice of and chose not to attend their hearings. Furthermore, Edwin Vikman's statement presenting the reasons for his failure to participate in the picketing activities, and for working during the strike, was before the trial board during its deliberations. Sales contract records indicating the dates when both Duane and Edwin Vikman signed contracts also supported the trial board's conclusion that the Vikmans worked for three weeks during the strike rather than three days as they contend. Union trial proceedings allow the accused member to confront and cross-examine witnesses, as well. Drawing all inferences and resolving all conflicts in the evidence in favor of Local 1269, a jury thus could have found that the union hearing was fair and impartial and in accord with the requirements of the union constitution.

Where factual issues remain on the basis of which a reasonable jury could have found for the Local, the matter must be submitted to the jury. *Rennels v. Marble Products*, 175 Colo. 229, 234, 486 P.2d 1058, 1061 (1971). Where a directed verdict has been improperly entered, the trial court's judgment must be reversed and a new trial granted. *Klipp v. Grusing*, 119 Colo. 111, 113, 200 P.2d 917, 918 (1948).

Based on this analysis, the trial court improperly withheld the Vikmans' breach of contract counterclaims from the jury, and a new trial must be granted. Furthermore, because the Vikmans' outrageous conduct counterclaims also required the jury to evaluate union excesses in disciplinary action taken pursuant to the union constitution, I

would find that the jury verdict on that issue is tainted and also requires a new trial.[29]

## IV.

### Conclusion

For the foregoing reasons, I find that the trial court abused its discretion in declining to require the Vikmans to exhaust their union remedies before asserting breach of the union constitution as a defense to Local 1269's strike fine claims. I also find that the trial court erred in directing verdicts for both Duane and Edwin Vikman on their counterclaims of breach of the union constitution. I would return the case to the court of appeals with instructions to remand to the trial court for (1) dismissal of all defenses to the union's strike fine claims and entry of judgment for the union; and (2) a new trial of the Vikman's breach of contract and tort counterclaims.

ROVIRA, C.J., joins in Part I of the special concurrence.

**29.** The jury was given the following instruction on the issue of outrageous conduct:

The plaintiff claims that it was exercising its legal rights in declaring a strike against Mountain Bell, asking union members to picket, and in assessing fines against members who worked for Mountain Bell during the strike, and in bringing this action to collect those assessments. If the plaintiff was exercising its legal rights in a manner which would not otherwise constitute extreme and outrageous conduct, your verdict must be for the plaintiff.

Furthermore, the plaintiff had a legal right to file this lawsuit and to defend the counterclaims asserted by the defendants. If you find that the defendants suffered mental anguish caused by the litigation, you may not award damages for such injuries.